UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NAVIN A. MILKO,<br><br>Petitioner,<br><br>v.<br><br>KARIN ARNOLD,<br><br>Respondent. | CASE NO. 3:25-CV-6085-JHC-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: August 20, 2026 |

The District Court has referred this federal habeas case to United States Magistrate Judge David W. Christel. Petitioner Navin A. Milko initiated this action under 28 U.S.C. § 2254 on December 3, 2025, seeking relief from his state court judgment and sentence. *See* Dkt. 1. On February 10, 2026, Petitioner filed his Amended Petition raising ten grounds for relief. Dkt. 11. After review of the relevant record, the Court concludes Petitioner failed to properly exhaust his state court remedies as to all grounds raised in the Amended Petition and the grounds are procedurally defaulted. The Court finds an evidentiary hearing is not necessary and recommends the Amended Petition be denied and a certificate of appealability not be issued.

## I. Background

A. Factual Background

The Court of Appeals of the State of Washington summarized the facts of Petitioner's case as follows:

> *Background*
>
> In 2018, Milko on five separate occasions contacted women who worked as paid escorts and arranged to meet them at houses in Puyallup that he did not live in or own. When each woman arrived, Milko displayed a knife in an attempt to take their money or to rape them.
>
> Milko raped one woman, BP. BP was examined at the hospital by Jenny Biddulph, a sexual assault nurse examiner, who completed a rape kit. A forensic scientist later confirmed that the samples from the rape kit matched Milko's DNA. The police eventually detained Milko, who admitted during a police interview that he had sex with BP.
>
> The State charged Milko with 12 felony offenses related to the five incidents and five victims: one count of first degree rape of BP, two counts of second degree burglary of BP and a woman named AQ, two counts of attempted first degree rape of AQ and a woman named CD, one count of first degree burglary of a woman named AB, two counts of attempted first degree kidnapping of AB and a woman named KT, two counts of attempted first degree robbery of AB and CD, one count of attempted first degree burglary of KT, and one count of felony harassment of AB. The State also alleged three aggravating factors.
>
> In 2009 and 2010, Milko had engaged in two similar incidents in Florida involving paid escorts. There, Milko had contacted a woman named JA and another woman on separate occasions and asked them to meet him at a house that he did not live in or own. Milko raped both women at knifepoint. Milko pled guilty to charges related to both incidents.
>
> *Request to Allow Video Testimony*
>
> Milko's trial was set for July 2020, after COVID-19 had been declared a global pandemic and a national emergency in the United States. In February 2020, Governor Jay Inslee had proclaimed a state of emergency in Washington. He issued a number of proclamations designed to help curb the spread of COVID-19. The Supreme Court ordered all courts to follow the most protective public health guidance applicable in their jurisdiction and to use remote proceedings for public health and safety whenever appropriate.

During this state of emergency, the Center for Disease Control and Prevention (CDC) and the Washington Department of Health recommended social distancing measures of at least six feet between people and encouraged vulnerable individuals to avoid public spaces. The CDC encouraged people to avoid traveling because travel increased a person's chance of getting infected and spreading COVID-19. The CDC noted that older adults and people of any age with serious underlying medical conditions, such as diabetes and asthma, were at a higher risk for severe illness from COVID-19.

Before trial, Biddulph and JA informed the State that they were not able to fly to Washington to give their trial testimony in person because of significant health concerns related to COVID-19. Biddulph had moved to Virginia since examining BP and JA now lived in North Carolina. The State requested that the trial court allow Biddulph and JA to testify remotely by two-way video. In its request for video testimony, the State included several exhibits related to the pandemic, declarations from Biddulph and JA, and a letter from Biddulph's nurse practitioner. The court tentatively granted the motion, subject to an offer of proof as to why Biddulph and JA could not testify in person and a test run of the video and audio set-up.

The trial court held a hearing where it tested the video and audio equipment for remote testimony. Biddulph and JA both provided testimony about their concerns about flying to Washington, and the State and Milko questioned them about why they could not testify in person.

Biddulph stated in her declaration and at the hearing that she was concerned about flying because it would place her and her family at a significantly higher risk of exposure to COVID 19. Biddulph explained that she had three children and a husband who was attending school. She stated that she had stopped working as a nurse for her family's safety and to take care of her children, including a one-year-old baby who required specialized care due to feeding and weight gain issues. Biddulph's health care provider stated in a letter that it was not safe for Biddulph to travel because she had an infant at home.

Biddulph also stated that she and her husband had no local support system because their families lived abroad and that there would be no one available to take care of their children if either of them contracted COVID-19 or if she was to comply with the Virginia Department of Health's recommendation to self-quarantine for two weeks after returning home.

JA stated in her declaration and at the hearing that she was concerned about flying from South Carolina to Washington while wearing a mask because she had asthma, which made her a high-risk individual who was vulnerable to suffering severe health complications if she contracted COVID-19. She also explained that she could not wear a mask for a long period of time because wearing a mask constricted her breathing. She stated that her doctor had suggested that she avoid traveling or comingling around other people because of her status as a high-risk person. JA

explained that she also had hypertension and diabetes, which were two additional medical conditions that made her a high-risk person.

The trial court granted the State's request to allow Biddulph and JA to testify remotely and entered detailed findings of fact and conclusions of law.

The court made the following finding regarding Biddulph:

> 15. The court finds that Ms. Biddulph's testimony is necessary and that she cannot travel to Washington to testify because travel will place her at a significantly higher risk of exposure to the virus and that, in turn, will require her to quarantine, which she lacks the wherewithal to do while maintaining custody of her dependent children. Live testimony by Ms. Biddulph will place her and her children at an unreasonable risk of family separation and financial hardship.

Clerk's Papers (CP) at 512.

The court made the following finding regarding JA:

> 18. The court finds that J.A.'s testimony is necessary. The court finds that J.A.'s health concerns are warranted given the current circumstances with COVID-19. The court also finds that J.A.'s health is currently compromised, and she is at a higher risk of serious medical complications should she contract COVID-19. The court also finds that the witness cannot travel to Washington to testify because her health does not permit her to abide by airline mask requirements.

CP at 512.

The court entered the following conclusions of law:

> 1. There is a compelling interest that has demonstrated that due to the COVID-19 pandemic, there is a need to maintain appropriate social distancing in the courtroom.
>
> 2. This compelling interest has been recognized by the emergency proclamations made by Governor Jay Inslee and the Washington Supreme Court.
>
> . . . .

> 4. As a result, there is a compelling interest requiring the court to conduct trial in a manner that will protect the health and safety of the parties, jurors, counsel, court staff, witnesses, and the public.
>
> 5. This compelling interest in health and safety in the midst of a global pandemic is an important public policy that requires the court to utilize remote testimony to ensure the safety of witnesses.
>
> 6. The utilization of remote testimony necessarily furthers this important public policy of ensuring the health and safety of the parties, jurors, counsel, court staff, witnesses, and the public.

CP 514-15.

The court also entered the following findings of fact regarding the technology used to present the remote testimony:

> 22. Using an enhanced audio system in trial, the audio presentation of witnesses during trial was sufficient to allow the parties and the jurors to hear and understand what was being said by the witnesses, and it allowed the court reporter to make an adequate record of the language being used. The audio presentation allowed parties and the jurors to understand the words, emotions, speech patterns, and articulation of each witness.
>
> . . . .
>
> 26. The technology utilized during each witness' testimony provided the functional equivalent of the temporal and physical proximity of face-to-face testimony.

CP at 513-14. The court concluded that "[t]he utilization of technology to accomplish remote testimony provides clear evidence to the court that the reliability of the testimony [was] assured." CP at 515.

*Jury Trial*

At trial, the five victims and several investigating officers testified in person about the incidents giving rise to the charges against Milko.

Biddulph testified by two-way video about examining BP and completing a rape kit for her. JA testified by two-way video about Milko contacting her for her paid escort services in Florida and raping her at knifepoint. The trial court instructed the jury that the State was offering JA's testimony only to establish identity, a common scheme or plan, and/or modus operandi.

> The jury found Milko guilty of all charges except for attempted first degree robbery of AB and CD and found in special verdict forms the existence of certain aggravating factors.

*State v. Milko*, No. 55267-1-II (Wash. Ct. App. Mar. 15, 2022); Dkt. 15-1 at 80–84 (footnote omitted).

B. Procedural Background

1. *Direct Appeal*

Petitioner appealed his convictions to the Washington State Court of Appeals. Dkt. 15-1 at 2–26. In a brief filed by counsel, Petitioner argued the trial court violated his confrontation rights by permitting two out-of-state witnesses to testify remotely by video due to COVID-19 concerns. *Id*. at 2–26. In a statement of additional grounds for review, Petitioner also challenged (1) the legality of his exceptional sentence and (2) the sufficiency of the evidence supporting his conviction for attempted first degree rape of A.Q. *Id*. at 29–37.

The court of appeals affirmed Petitioner's convictions and sentence. *Id*. at 79–98. Regarding the confrontation claim, the court found no error in allowing the two out-of-state witnesses to testify by video. *Id*. at 79, 88–92. The court further rejected Petitioner's argument that "either . . . the trial court failed to explicitly state that his exceptional sentence was indeterminate rather than determinate, or that the trial court could not impose an indeterminate exceptional sentence." *Id*. at 94–96. Additionally, the court held that sufficient evidence supported Petitioner's conviction of attempted first degree rape of A.Q. *Id*. at 92–94.

Petitioner filed a Petition for Review with the Washington Supreme Court, arguing that the use of remote video testimony violated his confrontation rights. *Id*. at 98–152. The Washington Supreme Court denied review. *Id*. at 98–152, 195. The court of appeals issued its mandate on July 19, 2022. *Id*. at 197–98.

2. *Personal Restraint Petition*

On July 10, 2023, Petitioner filed a *pro se* Personal Restraint Petition ("PRP") in the Washington State Court of Appeals seeking state post-conviction relief.[1] Dkt. 15-1 at 200–22. In his PRP, Petitioner raised ten grounds for relief: (1) sufficiency of the evidence for his conviction of attempted first degree rape of A.Q., (2) sufficiency of the evidence for his conviction of attempted first degree rape of C.D., (3) sufficiency of the evidence for his convictions of second degree burglary of B.P. and A.Q., (4) ineffective assistance of trial counsel, (5) ineffective assistance of appellate counsel, (6) violation of his constitutional right to a speedy trial, (7) the trial court's failure to respond to his motion to proceed *pro se*, (8) sufficiency of the evidence for his convictions of attempted burglary in the first degree and attempted kidnapping in the first degree of K.T., (9) denial of a motion to merge charges, and (10) sufficiency of the evidence for his conviction of felony harassment of K.T. *Id.*

On June 21, 2024, court-appointed counsel filed an amended supplemental brief on Petitioner's behalf. *Id.* at 463–513. Through counsel, Petitioner argued his conviction of attempted burglary in the first degree of K.T. rested on insufficient evidence, the sentencing court miscalculated his base sentence, and the exceptional sentence was imposed in violation of Petitioner's right to a jury trial. *Id.*

On May 19, 2025, the court of appeals denied the PRP. *Id.* at 582–98. The court first rejected the supplemental claim of insufficient evidence, finding there was sufficient evidence from which a rational jury could have found Petitioner was armed with a deadly weapon beyond a reasonable doubt during the attempted burglary of K.T. *Id.* at 586–89. The court similarly

[1] The PRP was initially filed in Division II of the Washington State Court of Appeals and was later transferred to Division I. Ex. 5

rejected the supplemental sentencing calculation, finding Petitioner had not established a conceded calculation error was a fundamental defect resulting in a complete miscarriage of justice. *Id*. at 591–94. As to the supplemental claim regarding Petitioner's exceptional sentence, the court found the issue was time-barred and that Petitioner failed to show prejudice. *Id*. at 595–97.

The court rejected all the claims in the initial PRP, except one, on the grounds that they were insufficiently argued and failed to establish prejudice. *Id*. at 590, 597–98. The court specifically addressed and denied Petitioner's claim of insufficient evidence for the attempted first degree rape of A.Q., stating the court had already rejected this issue on direct appeal and Petitioner had not shown the interests of justice required relitigation of the issue. *Id*. at 590–91.

Petitioner sought discretionary review in the Washington Supreme Court, arguing the court of appeals erred in analyzing timeliness, rejecting his initial PRP claim concerning the attempted rape and burglary charges involving A.Q., dismissing his supplemental claims, finding certain claims insufficiently argued, and considering "the wrong facts." *Id*. at 600–07. The Washington Supreme Court denied review. *Id*. at 650–51. Petitioner filed a motion to modify the ruling, which was also denied. *Id*. at 653–56, 686. The Washington Court of Appeals issued its mandate on December 5, 2025. Dkt. 15-2 at 2–3.

3. *Federal Petition*

On December 3, 2025, Petitioner initiated this habeas action. Dkt. 1. On February 10, 2026, Petitioner filed an Amended Petition raising the following ten grounds for relief:

1. The State did not meet their burden of proof with regard to the attempted rape in the first degree regarding A.Q. . . . The State and court convicted [Petitioner] on this charge based on evidence from a different count (ex. the rape of B.P.), which is in violation of the U.S. Constitution, and the Washington Constitution.

2. [The] State did not meet their burden of proof with regards to B.P. and A.Q. burglary in the 2nd degree. The State did not prove any element of the two charged burglary in the 2nd degree. The [statute] states that in order for someone to be convicted of burglary a backyard has to be enclosed by a fence and contain goods that [Petitioner] could steal.

3. The State did not satisfy the burden of proof of attempted rape in the first degree with regards to C.D. The State failed to prove all elements of attempted rape in the first degree because all they provided was C.D.'s testimony that said that [Petitioner] said "If I can't rob you, I'm going to rape you.["] . . . Not only that[,] C.D. failed to [identify Petitioner] in not just one photo montage but two of them.

4. The court violated [Petitioner's] constitutional right to a speedy trial. [Petitioner] was arrested on 10/18/2018 and did not have [his] trial until 7/13/2020. The reasons vary for the continuances including vacations which is not a good reason for a continuance. [Petitioner] wrote a letter to Judge Sorenson requesting a speedy trial and to proceed pro se.

5. The State failed to submit evidence to support the charges of attempted kidnapping and attempted burglary in regards to K.T. The State did not provide any evidence that [Petitioner] attempted to kidnap K.T. which is in violation of both the U.S. Constitution, and the Washington State Constitution.

6. Trial counsel was ineffective. Mr. Quigley failed to talk to [Petitioner's] mother who had alibi evidence. He also failed to file a motion to dismiss some of the charges based on lack of evidence.

7. Direct appeal counsel was ineffective. Mrs. Cunningham only appealed the case on the grounds of confrontation of witnesses that testified via zoom. She didn't even consider any other grounds even after [Petitioner] pointed them out to her.

8. [The] trial court failed to answer [Petitioner's] motion/letter to proceed pro se. [Petitioner] wrote a letter to Judge Sorenson requesting to proceed pro se and yet [Petitioner] didn't heard anything from the court. It was set to be [heard] but nothing came of it.

9. Trial counsel made a motion to merge some of the counts which the trial court denied. Mr. Quigley asked the court to merge the burglary charges with the other charges based on the fact that [Petitioner] did not go into the houses with the intent to [burglarize] them but to commit other charges.

10. The State failed to prove felony harassment with regards to K.T. The State did not show that [Petitioner] made a threat that [he] was likely to carry out to K.T. They did not prove beyond a reasonable doubt that [Petitioner] said anything to K.T. that would make her in fear that [he] would actually carry out these threats.

Dkt. 11. Petitioner asserts all grounds for relief have been raised to the highest state court having jurisdiction. *Id.* On April 23, 2026, Respondent filed, and served on Petitioner, an Answer and the relevant state court record. Dkts. 14, 15. Petitioner filed a Traverse on May 13, 2026. Dkt. 16. On May 19, 2026, Respondent filed a Reply. Dkt. 17.

## II. Discussion

Respondent contends all ten of Petitioner's claims are unexhausted and procedurally barred from federal review. Dkt. 14.

### A. Exhaustion of State Remedies

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a

specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

At the outset, the Court notes that Petitioner's Petition for Review to the Washington Supreme Court on direct appeal raised only issues concerning the witnesses who testified via video. Dkt. 15-1 at 98–152. Plaintiff does not repeat these claims in the instant Petition. *See* Dkt. 11. Therefore, Petitioner must have presented each of his current grounds for relief as federal claims before the Washington Supreme Court in his Motion for Discretionary Review of his PRP (Dkt. 15-1 at 600–07) to adequately show exhaustion.

Respondent contends Petitioner failed to exhaust his state court remedies because he did not fairly present any of the grounds to the Washington Supreme Court as federal constitutional claims. Dkt. 14 at 10. Petitioner disagrees, arguing that he raised these same claims in his PRP, which he gave the Washington Supreme Court an "opportunity to review" by filing a Motion for Discretionary Review, "[e]ven if the claims were not expressively [sic] stated[.]" Dkt. 16 at 1–2.

As stated above, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. 162–63. Vague references to broad constitutional principles such as due process, equal protection and a fair trial do not satisfy the exhaustion requirement. *Id*. at 162; *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999); *Gatlin v. Madding,* 189 F.3d 882, 888 (9th Cir. 1999). Even where the petitioner argues an error deprived him of a "fair trial" or the "right to present a defense," unless the

petitioner expressly states he is alleging a specific federal constitutional violation, the petitioner has not properly exhausted the claim. *Johnson v. Zenon,* 88 F.3d 828, 830–31 (9th Cir. 1996). Moreover, the fact that a state law claim was "essentially the same" as the claim subsequently asserted in federal court does not satisfy the exhaustion requirement. *Id.* at 830. Citation to Washington case law, even if the case applied a standard similar to the federal standard, does not suffice to apprise the Washington courts of a federal claim. *Hiivala,* 195 F.3d at 1106–07.

1. *Grounds 1, 2, 3, 5, and 10*

Respondent contends Petitioner failed to raise Grounds 1, 2, 3, 5, and 10 as federal constitutional violations. Dkt. 14 at 15-18. Respondent contends these five grounds all challenge the sufficiency of the evidence and Petitioner failed to raise these grounds as federal constitutional violations. *Id*. In Grounds 1, 2, 3, 5, and 10, Petitioner contends the State failed to present sufficient evidence to meet its burden. For example, in Ground 1, Petitioner alleges the State failed to meet its burden of proof with regard to the attempted rape of A.Q. *See* Dkt. 11. In the Motion for Discretionary Review, Petitioner asserted the state court of appeals incorrectly denied Petitioner's claims related to A.Q. *See* Dkt. 15-1 at 604. Petitioner, however, did not raise this claim as a federal constitutional claim. Petitioner failed to cite any state or federal law and, it appears the state court of appeals cited to only Washington law when deciding the PRP. *See* Dkt. 15-1 at 613-16. Petitioner did not identify how the state court's alleged error violated the federal Constitution and Petitioner did not cite any federal cases.

It also appears Petitioner attempted to raise insufficiency of evidence arguments related to Gound 2 – the State failed to prove burglary in the second degree – and Ground 5 – the State failed to prove attempted kidnapping. *See* Dkt. 15-1 at 604, 606. Again, Petitioner did not raise these claims as federal constitutional claims. Petitioner failed to cite any state or federal law and

only cited to state law in his PRP. *See* Dkt. 15-1 at 640. While Petitioner referenced the Fifth Amendment in his PRP, this, alone, is not sufficient to put the state supreme court on notice of a federal constitutional claim. Petitioner did not raise any other sufficiency of the evidence claims in his motion for discretionary review and as such did not raise Ground 3 – the State failed to prove attempted rape in the first degree with regards to C.D. – or Ground 10 – the State failed to prove felony harassment with regards to K.T. – to the highest state court. *See* Dkt. 15-1 at 603-606.

Because Petitioner did not present Grounds 1, 2, 3, 5, or 10 as federal constitutional claims to each level of the state courts, he did not properly exhaust these five grounds. *See Casey*, 386 F.3d at 914 (internal quotations omitted) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court."); *Smith v. McKenna*, 2009 WL 1181261, at *9 (W.D. Wash. Apr. 30, 2009) (finding the petitioner did not exhaust when he made no reference to any specific federal constitutional guarantee or federal case law in support of the relief he sought). Accordingly, the Court finds Grounds 1, 2, 3, 5, and 10 were not properly exhausted.

2. *Ground 4, 6, 7, 8, and 9*

Petitioner raised Grounds 4, 6, 7, 8, and 9 in his PRP. *See* Dkt. 15-1 at 208-18. Petitioner, however, did not raise the claims alleged in Grounds 4, 6, 7, 8, or 9 in his motion for discretionary review. Dkt. 15-1 at 603-606. Further, to the extent he may have arguably attempted to raise these grounds, he did not alert the state's highest court that he was raising federal constitutional violations. As Petitioner did not give the state courts one full and fair opportunity to consider these claims, he failed to exhaust Grounds 4, 6, 7, 8, and 9. *See Baldwin*

*v. Reese*, 541 U.S. 27, 29 (2004) (petitioner must present issues to the state supreme court before seeking federal habeas relief).

3. *Conclusion*

Here, Petitioner did not fairly present his claims to the state supreme court. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. "[T]his Court has found failure to satisfy the fair presentation requirement where the Court was required to 'read beyond a petition or brief' to uncover petitioner's federal claim." *Little v. Haynes*, No. C20-1071, 2021 WL 2211309, at *6 (W.D. Wash. May 12, 2021), *report and recommendation adopted*, No. C20-1071, 2021 WL 3111604 (W.D. Wash. July 22, 2021). This is exactly the situation here. While Petitioner raised his claims in his PRP, he did not clearly raise each claim as a federal constitutional violation and did not clearly raise any of the grounds in his motion for discretionary review before the state supreme court. As the state supreme court was not required to read beyond the motion for discretionary review to try to uncover Petitioner's claims, the Court finds Petitioner failed to properly exhaust all grounds for relief raised in the Amended Petition.

B. Procedural Default

Respondent asserts Grounds 1 through 10 are procedurally defaulted and barred from federal review. Dkt. 14. Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court

would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

Grounds 1 through 10 are procedurally defaulted because if Petitioner attempted to present these claims in a subsequent PRP, the state court would find the claim barred by Washington State law. Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090. Petitioner's direct appeal became final in 2022 when the time to seek review from the U.S. Supreme Court expired. *See* Dkt. 14; *see also* Dkt. 15-1 at 195 (state supreme court denying petition review on July 13, 2022). The time to file a petition or motion for post-conviction relief expired in October 2023, one year after Petitioner's direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id*. at (1); *see also Shumway v. Payne*, 223 F.3d 982, 988 n. 22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an independent and adequate state law barring federal habeas review).

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure to raise Grounds 1 through 10 at each level of his PRP. Therefore, Grounds 1 through 10 are also subject to an implied procedural bar because the ground would be "prohibited by an independent, adequate, and mandatory rule of state procedure, R.C.W. § 10.73.140, making a return to state court futile." *See Bolar v. Luna*, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

Petitioner would be precluded from asserting Grounds 1 thought 10 in the state court; therefore, all grounds raised in the Amended Petition are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey*, 386 F.3d at 920; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

Procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner must show "it is more likely than not

that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner fails to show some objective factor external to his defense prevented him from complying with the State's procedural bar rule. *See* Dkt. 16. Petitioner also fails to show the alleged trial errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions, and thus has not shown prejudice. *See id*. Furthermore, Petitioner has not provided new, reliable evidence showing he is actually innocent and, therefore, this is not the kind of extraordinary instance where this Court should review the claim despite the absence of a showing of cause. *Id*. As Petitioner failed to show cause or prejudice to excuse his procedural default, the Court is barred from reviewing Grounds 1 through 10 on the merits.

In sum, there is no evidence Petitioner exhausted the state court remedies to the highest state court for Grounds 1 through 10. As Petitioner bears the burden of proving he exhausted the available state court remedies and as there is no evidence showing Petitioner gave the state court a full and fair opportunity to determine if a federal constitutional violation occurred, all grounds raised in the Amended Petition were not properly exhausted. *See Braley v. Crownes*, 2005 WL 2304273, at *1 (E.D. Cal. Sept. 20, 2005) (dismissing petition for failure to exhaust where the petitioner claimed he was entitled to be released, but had not raised the claims to the highest state court). Further, Grounds 1 through 10 are procedurally defaulted. As Petitioner has not overcome the procedural default, the Court recommends the Amended Petition be dismissed. *See Casey*, 386 F.3d at 920-21.

**III. Evidentiary Hearing**

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's grounds may be resolved on the existing state court record.

## IV. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Amended Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this case.

## V. Conclusion

For the above stated reasons, the Court concludes Petitioner failed to exhaust the grounds alleged in the Amended Petition -- Grounds 1 through 10 -- and these grounds are procedurally defaulted. The Court finds an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be denied and a certificate of appealability not be issued.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 20, 2026.**

Dated this 30th day of July, 2026.

David W. Christel
United States Magistrate Judge